# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARK LEE STINSON, | | CASE NO. 1:00-cv-06067-LJO DLB PC |
| | Plaintiff, | **PRETRIAL ORDER** |
| v. | | |
| ORTIZ, et.al., | | Jury Trial: April 2, 2007, at 9:00 a.m. in Courtroom 4 (LJO) |
| | Defendants. | |
| _____ / | | |

Plaintiff Mark Stinson ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's amended complaint, filed April 2, 2001, against defendants Roper, Ortiz, Cooke and Goff ("defendants") for acting with deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment. Plaintiff's amended complaint originally included claims for retaliation and declaratory judgment as well as deliberate indifference to medical needs. On April 3, 2002, the Court granted defendants' motion to dismiss and motion for summary judgment as to all defendants and all claims. Plaintiff appealed and in an unpublished opinion filed August 21, 2003, the Ninth Circuit affirmed summary judgment as to plaintiff's retaliation and declaratory judgment claims and remanded plaintiff's deliberate indifference to medical needs claim. On May 24, 2006, the District Court adopted this court's recommendation to deny defendants' motion for summary judgment on plaintiff's Eighth Amendment claim because there remains a genuine issue of material fact as to whether defendants were deliberately indifferent to plaintiff's serious medical

needs by denying him ice which was arguably ordered to combat painful side effects from plaintiff's HIV medication. The Court also denied summary judgment on qualified immunity grounds. The Court held a Pretrial Conference on February 23, 2007. The parties have submitted pretrial statements. Having reviewed the statements and the remainder of the file, the Court now issues the instant Pretrial Order.

I.Jurisdiction and Venue

The Court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. § 1331. Venue is proper because the conduct allegedly occurred in this judicial district.

II.Jury Trial

The parties request trial by jury.

III.Facts

A.Undisputed Facts

1.At all times relevant to the events described in the Complaint, Plaintiff Stinson was a state prisoner housed at Corcoran.

2.Plaintiff is HIV positive.

3.Plaintiff was in possession of a chrono for ice every evening that was dated November 19, 1998 to November 19, 1999.

4At all times relevant to the events described in the Amended Complaint, defendant Cooke was employed at Corcoran as Facility Sergeant.

5.Defendant Cooke recalls giving Plaintiff ice as allowed in his chrono.

6.Sometimes inmates at Corcoran use ice in their possession to hustle the other prisoners. For example, they have been known to sell their ice to other prisoners.

7.Plaintiff was upset with the amount of ice defendant Cooke gave him, and filed a CDC inmate appeal.

8.The chrono, dated January 30, 1998 to January 30, 1999, authorized ice for plaintiff for medically related purposes. Defendant Cooke was aware that certain medications increased the body temperature and caused dry mouth. He did not know specific facts regarding plaintiff's medical condition.

9. At all times relevant to the events described in the Amended Complaint, defendant Roper was employed at Corcoran as an officer.

10. Defendant Roper recalls giving plaintiff ice or ice water as needed.

11. Although defendant Roper knew plaintiff was HIV positive, he did not know what specific medical treatment plaintiff was receiving.

12. At all times relevant to the events described in the Amended Complaint, defendant Ortiz was employed at Corcoran as a Facility Captain.

13. At all times relevant to the events described in the Amended Complaint, defendant Goff was employed at Corcoran as a correctional officer.

14. In 1999, at the time of the events alleged in the Amended Complaint, inmates could get cold water at water fountains located on the yard and in the housing units. Cold water was also available in sinks located in the cells.

15. In mid-July of 1999, Plaintiff was transferred from Corcoran State Prison to the California Mens' Colony.

B. <u>Disputed Facts</u>

Defendants decline to adopt Plaintiff's disputed facts and submit that the following facts will be disputed:

1. Whether Correctional Officer Goff denied Plaintiff ice on March 18, 1999?
2. Whether Correctional Officer Roper denied Plaintiff ice between March 18, 1999 and mid July 1999?
3. Whether Plaintiff had a legitimate medical chrono for ice on March 18, 1999?
4. Whether the Chief Medical Officer had issued an order invalidating all ice chronos at Corcoran State Prison in 1999?
5. The medical reason behind the purported chrono for ice on March 18, 1999?
6. Whether Plaintiff's consumption of ice water alleviated the side-effects of his drug therapy?
7. Whether the purported denial of ice to Plaintiff contributed to the failure of his anti-viral therapy?

      8.    Whether Plaintiff suffered any injury as a result of the purported denial of ice?

      9.    Whether Plaintiff timely filed his complaint?

    C.    <u>Disputed Evidentiary Issues</u>

      1.    <u>Plaintiff</u>

None.

      2.    <u>Defendants</u>

Defendants anticipate that various authentication issues my arise concerning Plaintiff's purported exhibits and witnesses. However, defendants are confident that these issues can be resolved by motions in limine; thus preventing Plaintiff's attempts to prejudice the jury with either irrelevant and/or impermissible evidence. Additionally, with regard to Plaintiff's case in chief, Defendant does intend to utilize deposition testimony for impeachment purposes.

    D.    <u>Special Factual Information</u>

Defendants submit the following special factual information:

On the March 18, 1999, Plaintiff was a prisoner infected with HIV, housed in building 3 of the 3A Facility of Corcoran State Prison. He alleges that on said date while housed in the special medical unit at Corcoran, he was denied ice by Correctional Officer Goff, which he claims he needed for medical reasons. He further claims that he witnessed Correctional Officer Roper dump ice in the shower, although it is unclear whether this occurred on the same date. As a result of the alleged denial of ice, Plaintiff claims that his "T-cells" have dropped and the HIV virus "has mutated." Plaintiff also claims to have suffered painful side-effects from his drug therapy as a result. Defendants contend that Plaintiff's complaint is unfounded and further is untimely under the applicable statute of limitations as Plaintiff did not file his complaint until more than 16 months after the March 18, 1999 accrual of the cause of action. *See* Former CCP Sec. 340(3).

The doctrines of strict liability and res ipsa loquitur have no applicability in this case.

**(B)**

On the date of the incident, Plaintiff was 36 years of age. Plaintiff allegedly suffered severe dehydration, an unrelenting pounding in his head brought on by migrane headaches, and a burning sensation in his throat, chest and stomach as a result of the purported denial of ice. Because Plaintiff

4

is a prisoner, he has no out of pocket medical expenses, property damage or loss of earnings claims.

Plaintiff claims he is entitled to $100,000.00 in compensatory damages and asks the Court to determine if any punitive damages are appropriate.

IV. <u>Relief Sought</u>

Plaintiff is seeking monetary damages of $100,000.00 in compensatory damages for alleged pain and suffering both mentally and physically over a 4-month period. Plaintiff also seeks punitive damages in any amount that the court deems just, proper and equitable. Further it should be noted that Plaintiff's declaratory relief claim was dismissed. Defendants assert that Plaintiff is not entitled to any form of compensation.

V. <u>Points of Law</u>

A. <u>Eighth Amendment Claim Brought Pursuant to Section 1983</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted.) "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." <u>Id</u>.

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" <u>Hydrick v. Hunter</u>, 466 F.3d 676, 689 (9th Cir. 2006) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by

5

some kind of direct, personal participation in the deprivation, but also be setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Deliberate indifference can be manifested by prison guards intentionally denying or delaying

access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. at 104-05. However, where a prisoner alleges a delay in receiving medical treatment, the prisoner must allege that the delay led to further injury. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997); Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Although neither a physician's negligence nor a prisoner's disagreement with a particular course of treatment states a claim for deliberate indifference, a prison medical staff's acts or omissions will constitute deliberate indifference if staff members knew of and disregarded an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. at 837. Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once prescribed." Estelle v. Gamble, 429 U.S. at 104-05. The Ninth Circuit has found deliberate indifference where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992) (reversing summary judgment where prison officials forced prisoner to endure a plane flight that resulted in ear injury, in direct contravention of a treating physician's previous orders); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curium) (reversing summary judgment where medical staff knew that pretrial detainee had head injury, but prescribed contraindicated medications, disregarding evidence of complications to which they had been specifically alerted by private treating physician); Tolbert v. Eyman, 434 F.2d 625 (9th Cir. 1970) (finding cognizable claim for deliberate indifference where warden refused to authorize prisoner's receipt of medicine that had been previously prescribed by a physician); Cf. McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992) (where surgery recommended by prisoner's prior physician was severely delayed, court was unable hold doctors liable because prison administrators, not the doctors, were responsible for scheduling treatment).

The Courts of other federal Circuits have also found deliberate indifference where prison officials ignore a previous physician's treatment plan. White v. Napoleon, 897 F.2d 103 (3rd Cir. 1990) (finding cognizable claim for deliberate indifference where prison officials ignored private

7

hospital's treatment orders and refused inmate's access to prescribed medication); Gill v. Mooney, 824 F.2d 192 (2nd Cir. 1987) (finding cognizable claim where prison officials refused to permit plaintiff to participate in exercise program prescribed by doctor); Eades v. Thompson, 823 F.2d 1055 (7th Cir. 1987) (finding cognizable claim where prisoner alleged that prison officials made him travel and carry a heavy box, causing a surgical incision to gape open, in violation of prior medical orders); Martinez v. Mancusi, 443 F.2d 921 (2nd Cir. 1970), cert. denied 401 U.S. 983, cited with approval by Estelle v. Gamble, 429 U.S. at 105 n.10 (finding deliberate indifference where prison staff forced post-surgical prisoner-patient to walk, ignoring warnings from hospital personnel that inmate should not be moved); see also Carl T. Drechsler, Annotation, Relief Under Federal Civil Rights Acts to State Prisoners Complaining of Denial of Medical Care, 28 A.L.R. Fed. 279 (1976) (recognizing that, on the whole, courts do not condone the practice of prison officials ignoring orders rendered by a prisoner's previous physician).

   B. Punitive Damages

The plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 7.5 (2006). The jury must find that the defendants' conduct was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1986).

VI. Abandoned Issues

  None.

VII. Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

A.  Plaintiff's Witnesses[1]

1.  Inmate Fetus Butler - CDC J-15885

Plaintiff's motion to have this witness transported to Court for trial is granted. The Court will issue writs to have both plaintiff and Mr. Butler transported to this Court for trial.

B.  Defendants' Witnesses

1.  Correctional Officer Debra Goff, c/o her counsel The Law Offices of Moreno & Rivera, LLP, 1451 River Park Drive, Ste 145., Sacramento, CA 95815.

2.  Correctional Officer Russel Roper, c/o his counsel The Law Offices of Moreno & Rivera, LLP, 1451 River Park Drive, Ste 145., Sacramento, CA 95815.

3.  Correctional Sergeant Bruce Cooke, c/o his counsel The Law Offices of Moreno & Rivera, LLP, 1451 River Park Drive, Ste 145., Sacramento, CA 95815.

4.  Associate Warden David Ortiz, c/o his counsel The Law Offices of Moreno & Rivera, LLP, 1451 River Park Drive, Ste 145., Sacramento, CA 95815.

5.  Expert Witness: Shelly M. Gordon, M.D., 2100 Webster Street, Suite #404, San Francisco, CA 94115.

VIII.  Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

A.  Plaintiff's Exhibits

1.  An unidentified 602 that will show that Goff refused plaintiff treatment;

2.  An unidentified 602 that will show that Cooke refused plaintiff treatment;

3.  An unidentified document that will show tha6t Cooke advised staff to tell plaintiff

---

[1] Plaintiff also listed Lt. Dean and Correctional Officer Mendoza as witnesses in his Pretrial Statement. However, at the Pretrial Conference, Plaintiff indicated that he did not have funds to subpoena these witnesses. The Court advised Plaintiff that it did not have funds available to subpoena witnesses on behalf of pro se litigants.

that ice chronos were no good;

4. An unidentified document that will show that plaintiff was under duress having to choose which medication to stop in order to receive some relief from pain;

5. An unidentified document that will show that plaintiff's chrono was valid and signed by a doctor;

6. An unidentified document that will show that plaintiff told doctors of the dehydration and that he was on the UHT list;

7. An unidentified document that will show that plaintiff's viral load was undetectable before Corcoran;

8. A completed 602

9. An unidentified document that will show that after Corcoran, plaintiff's ice was restarted.

B. Defendants' Exhibits

1. Plaintiff's Amended Complaint and exhibits thereto.

2. Defendants' Answer.

3. Plaintiff's Criminal Convictions / Judgments.

4. Mark Lee Stinson's Medical Records from the California Department of Corrections & Rehabilitation.

5. Declaration of Independent Medical Expert Shelly M. Gordon, M.D. Defendants' Motion for Summary Judgment.

6. Deposition transcript of Plaintiff, or portions thereof, including exhibits.

7. Plaintiff's Statements contained his in CDC 602.

Defendants object to Plaintiff's exhibits to the extent Plaintiff fails to identify the specific exhibit referenced in that defendants are unable to determine if any evidentiary issues would arise from said exhibit.

IX. Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions)

Defendants anticipate using portions of Plaintiff's deposition testimony.

X.   Further Discovery or Motions

Defendants anticipates that no further discovery is necessary. However, Defendant anticipates filing various motions in limine pertaining to the evidence to be presented by Plaintiff.

Both parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer in a previous response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(2). If either party intends to file motions in limine, the procedure and time requirements are set forth below.

XI.   Stipulations

Defendants are prepared to stipulate to the undisputed facts listed above should Plaintiff be prepared to do so. Plaintiff agrees to stipulate that at all relevant times he was confined in an institution as defined by the Civil Rights Act.

XII.   Amendments-Dismissals

None.

XIII.   Settlement Negotiations

At the Pretrial Conference, the parties were directed to discuss settlement and advise the Court if they desired that a conference be set prior to trial.

XIV.   Agreed Statements

Defendants believe that an Agreed Statement of Facts can be arrived at regarding the presentation of some of the evidence; i.e. the undisputed facts of the case. Plaintiff agrees that presentation of some parts of this action by agreed statement of facts is feasible.

XV.   Separate Trial Of Issues

The punitive damages phase, if any, will be bifurcated.

XVI.   Impartial Experts - Limitation Of Experts

None.

XVII.   Attorneys' Fees

The Plaintiff is Pro Se and attorney's fees are thus not appropriate. A pro se litigant is not an attorney, and is not entitled to compensation. Defendants may apply for fees under 42 U.S.C. Sec. 1988 following their success at trial.

XVIII. <u>Trial Exhibits</u>

No special handling of trial exhibits requested.

XIX. <u>Miscellaneous</u>

    A.    <u>Further Trial Preparation</u>

        1.    <u>Motions In Limine Hearing and Briefing Schedule</u>

Any party may file a motion in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. Although the Federal Rules do not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose. <u>Luce v. United States</u>, 469 U.S. 38, 41 n. 4 (1984); <u>Jonasson v. Lutheran Child and Family Services</u>, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. <u>Id</u>.; <u>Hawthorne Partners v. AT & T Technologies, Inc.</u>, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

All motions in limine must be served on the other party, and filed with the Court, by **March 19, 2007**. Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party, and filed with the Court, by **March 28, 2007**.

If any party files a motion in limine, the Court will hear and decide such motions on the morning of trial.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

        3.    <u>Other</u>

The parties are relieved of their obligation under Local Rule 16-285 to file trial briefs. If either party chooses to file a trial brief, they must do so on or before March 30, 2007. The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial. If the parties wish to submit a proposed verdict form, they must do so on or before **March**

**28, 2007**.

Defendants shall file proposed jury instructions as provided in Local Rule 51-163 on or before **March 28, 2007**. If plaintiff wishes to file proposed jury instructions, he must do so on or before **March 28, 2007**.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible. All jury instructions must be submitted in duplicate: One set will indicate which party proposes the instruction, with each instruction numbered or lettered, and containing citation of supporting authority, and the customary legend, i.e., "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction. One set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition. Defendants shall provide the Court with a copy of their proposed jury instructions via e-mail at: ljoorders@caed.uscourts.gov.

Proposed voir dire questions, if any, shall be filed on or before **March 28, 2007**. Local Rule 47-162.

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **March 28, 2007**. The Court will consider the parties' statements but will draft its own statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

The original and two copies of all trial exhibits along with exhibit lists shall be submitted to Courtroom Deputy Irma Lira no later than **March 28, 2007**. All of plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.). All of defendants' exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX 201, etc.).

B.   Appointment of Counsel

Plaintiff sought the appointment of counsel in his pretrial statement. The Court cannot require an attorney to represent Plaintiff. Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the Court may

1  request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer,
2  935 F.2d 1015, 1017 (9th Cir. 1991). Without a reasonable method of securing and compensating
3  counsel, this Court will seek volunteer counsel only in the most serious and exceptional cases. "A
4  finding of exceptional circumstances requires an evaluation of both 'the likelihood of success of the
5  merits and the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the
6  legal issues involved.'" Terrell, 935 F.2d at 1017 (citations omitted).

7  In the present case, the Court does not find the required exceptional circumstances. Even if
8  it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations
9  which, if proved, would entitle him to relief, his case is not exceptional. This Court is faced with
10 similar cases almost daily. Further, the Court cannot make a determination that Plaintiff is likely
11 to succeed on the merits, and based on a review of the record in this case, the Court does not find
12 that Plaintiff cannot adequately articulate his claims. Terrell, 935 F.2d at 1017.

13 XX.    Objections to Pretrial Order

14 Any party may file and serve written objections to any of the provisions of this Order on or
15 before **March 26, 2007**.

16                                             ***

17 FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR
18 THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION
19 OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY
20 WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

24 IT IS SO ORDERED.

25 Dated:   **March 13, 2007**                    /s/ **Dennis L. Beck**
   9b0hie                                        UNITED STATES MAGISTRATE JUDGE